UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TERRY DONALD RUTLEDGE,

    Plaintiff,

        v.                                      CAUSE NO. 3:24-CV-155-JD-JEM

BRIAN ENGLISH, et al.,

    Defendants.

OPINION AND ORDER

Terry Donald Rutledge, a prisoner without a lawyer, was ordered to show cause why the initial partial filing fee has not been paid. (ECF 5.) In light of his response (ECF 8), the case will proceed to screening under 28 U.S.C. § 1915A. He is reminded that he remains obligated to pay the full filing fee over time in accordance with 28 U.S.C. § 1915(b)(2).

As required by 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Rutledge is proceeding without

counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Rutledge is an inmate at Westville Correctional Facility. (ECF 6.) His complaint stems from events occurring at Miami Correctional Facility beginning in June 2023. (ECF 1.) Around that time Mr. Rutledge "came out as a trans-woman" and began receiving taunts and harassing comments from his cellmate and other inmates. He told a non-party mental health provider what was happening, and she in turn said she would notify the Prison Rape Elimination Act ("PREA") Compliance Manager, Lauren Harbaugh. Around June 20, 2023, he met with Caseworker Murray and Deputy Warden Aaron Smith and told them he needed "out" of his cell because of concerns he would be sexually assaulted, but at that point he was afraid to identify the inmate by name because he was a high-ranking gang member.[1] He claims these individuals did not take steps to move him or otherwise protect him, and two days later he was beaten and sexually assaulted by his cellmate.

He claims that weeks passed, during which time his cellmate sexually assaulted him several more times. He met with Caseworker Murray again and at that point told her the name of the inmate. He claims she became "semi hostile and "distant" toward him but told him she would email Manager Harbaugh about his report.[2] Still nothing happened, however, and in subsequent conversations he "begged" Caseworker Murray

---

[1] It can be plausibly inferred that these individuals had the ability to learn the identity of his cellmate by checking prison records.

[2] He alleges that the inmate "worked for her as a dorm representative" and that she was rumored to be personally involved with him. (ECF 1 at 5.)

to move him. He claims she told him to "be patient" and instructed him not to contact Manager Harbaugh or the prison's internal affairs department directly because she was already in contact with them. While he was waiting for prison employees to take action, he claims to have been sexually assaulted again by his cellmate and another inmate.

On July 17, 2023, he experienced a "particularly brutal rape" by his cellmate and later met with Caseworker Murray. He told her he wanted to speak with internal affairs himself, and she allegedly became angry with him. He claims she then had him transferred to the "most violent cellhouse in the facility," where inmates with disciplinary problems were housed, even though he had not had a disciplinary infraction in three years. When he arrived at this cellhouse, gang members immediately approached him and told him they knew he had been "snitching" on gang activities and that he "had to leave or else." He notified Officer C. Nelson that he needed protective custody and that he had been sexually assaulted a day earlier. Officer Nelson allegedly told him to go get some rest and said he would bring him a rape kit, but he never brought him the kit or took action to have him moved. Later that night Mr. Rutledge became so depressed he attempted to hang himself and had to be taken to an outside hospital for treatment.

On July 25, 2023, he returned from the hospital and was placed in the protective custody unit in the A-cellhouse. He claims two officers in the A-cellhouse, Sergeant Rodriguez and Sergeant Everrate (first names unknown) denied him his dinner on his first night there and also did not get him a mattress until the next day. A few days later he attempted suicide again. He claims Sergeant McCray discovered him hanging in his

cell and was unnecessarily rough when taking him to the medical unit, slamming his head against the bed unnecessarily and twisting his hands behind his back. He claims Sergeant McCray accused him of faking and yelled to other guards, "I'm not carrying his fat ass down all those stairs." (ECF 1 at 9.)

On August 1, 2023, he had a meeting with the protective custody review committee, consisting of Unit Team Manager ("UTM") Shaun Dwyer, Lieutenant B. Meyers, and Case Manager T. Hamrick. He claims that Captain R. McCullum, Internal Affairs Officer J. Snow, and his mental health provider, B. Beck, were also present at this meeting. He claims he told these employees he was being threatened and assaulted, but UTM Dwyer was allegedly hostile toward him and repeatedly called him a liar. The meeting ended abruptly when UTM Dwyer told Mr. Rutledge to leave. The following day, Lieutenant Meyers told Mr. Rutledge that after he left the room, UTM Dwyer told everyone that Mr. Rutledge had made sexual advances toward Caseworker Murray, which he claims is false.

A few weeks after this meeting, Mr. Rutledge was told he was being moved back to general population at the direction of UTM Dwyer. He claims that one of the inmates who sexually assaulted him was still in general population. He contacted Warden Brian English, Mental Health Provider Beck, and Lieutenant Meyers, "begging" them for help so that he would not be moved to general population. He claims they did nothing, however, and in early September 2023, he was moved back to general population. During the move, he repeated his safety concerns to Sergeant McCray, telling him that inmates in that unit wanted to kill him for reporting the earlier sexual assaults. Sergeant

McCray allegedly responded that he "could care less." Mr. Rutledge was taken to a cell just a few doors down from one of the inmates who had assaulted him. He claims he was brutally assaulted by this inmate "the very next day."

He further claims that he was subjected to homophobic slurs and threats of physical violence by multiple inmates while in his new cell assignment. Sergeant Cervantes came to his cell to collect some clothing and allegedly overheard the threats, but did nothing to help him. He told Sergeant Cervantes that he needed help and feared for his safety because his new cellmate had been threatening him. Sergeant Cervantes allegedly brushed off his concerns and told him if he didn't give him the clothing he would call Sergeant McCray and "it wouldn't be pretty." The next day, he was sexually assaulted by his new cellmate.

In late September 2023, he received a written response to complaints and grievances he had filed about his need for protection. He claims UTM Dwyer made "outrageous and fabricated lies" in the response, stating that his rape allegations could not be substantiated and that he was "yelling and aggressive" during his meeting with the protective custody committee members and refused to answer their questions. He remained in general population.

In late October 2023, Sergeant Rodriguez was passing out food trays in his unit and allegedly called him a "bitch" and a "faggot" and then "told the entire cellhouse that I snitched on him." The following day, Sergeant Rodriguez returned and continued to taunt him, stating, among other things, "how was I going to be a girl if I didn't even wash my ass." A few days later Mr. Rutledge met with Internal Affairs Officer Snow

and complained about Sergeant Rodriguez's behavior. The next day Sergeant Rodriguez returned to the unit and loudly told the inmate in the cell next to Mr. Rutledge that he had to tell him something. Later that day, Mr. Rutledge's neighbor began yelling that Mr. Rutledge had filed a PREA complaint against Sergeant Rodriguez. He claims this led to additional threats being made by inmates who told him to drop his PREA complaint "or die." It can be discerned from his complaint that action was finally taken to move him in January 2024, and a few months later he was transferred to a different correctional facility.

Based on these events, he claims to have suffered severe physical and emotional injury. In addition to the physical injuries he suffered in the assaults, his depression and anxiety became so bad that he began to hallucinate, requiring him to take "multiple psychotropic medications." He sues 17 defendants: Warden English, Deputy Warden Smith, UTM Dwyer, Caseworker Murray, Manager Harbaugh, Officer Nelson, Sergeant McCray, Sergeant Rodriguez, Sergeant Cervantes, Sergeant Everrate, Lieutenant Meyers, Captain McCullum, Internal Affairs Officer Snow, Caseworker Hamrick, Mental Health Provider Beck, Caseworker W. Keller, and Grievance Specialist Michael Gapski seeking monetary damages.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777

6

(7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). To be held liable for an Eighth Amendment violation, a defendant must have had "actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). Phrased another way, a prison employee must have "acted with the equivalent of criminal recklessness, in this context meaning that they were actually aware of a substantial risk of harm to [the plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008).

Giving Mr. Rutledge the inferences to which he is entitled, he has alleged a plausible failure-to-protect claim against Warden English, Deputy Warden Smith, UTM Dwyer, Caseworker Murray, Manager Harbaugh, Captain McCullum, Officer Nelson, Sergeant McCray, Sergeant Rodriguez, Sergeant Cervantes, Lieutenant Meyers, Internal Affairs Officer Snow, Caseworker Hamrick, and Mental Health Provider Beck.[3] He claims that he made all of them personally aware that he would be sexually assaulted or beaten if he did not receive protection from certain inmates. By his account, they brushed off his concerns, did nothing to help him, and further endangered him by

---

[3] It is not entirely clear at this stage whether a mental health care provider had the ability to move Mr. Rutledge, but he claims this individual turned a blind eye to his need for protection even though he or she participated in the protective custody meeting and was aware of his safety concerns. The court must afford Mr. Rutledge all favorable inferences arising from his allegations at this stage. *Twombly*, 550 U.S. at 570.

7

transferring him to a dangerous cellhouse and labeling him a snitch in front of other inmates. *See Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008) (observing that "it's common knowledge that snitches face unique risks in prison"). He claims he was brutally attacked multiple times in the manner he warned these prison employees about. He will be permitted to proceed against these defendants under the Eighth Amendment.

As for Sergeant Everrate, his only involvement in these events as outlined in the complaint was to deny Mr. Rutledge a meal and a mattress for one night after he was transferred to the disciplinary cellhouse. Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *Farmer*, 511 U.S. at 833-34. To trigger the Eighth Amendment, the plaintiff must have experienced a deprivation that is "sufficiently serious" such that "a prison official's act results in the denial of the minimal civilized measure of life's necessities." *Id.* at 834. One missed meal is not the type of extreme deprivation that would support an Eighth Amendment claim. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). Neither is being denied a mattress for one night. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Skalland v. Huffnagle, et al.*, No. 1:15 CV 307, 2016 WL 695950, at *2 (N.D. Ind. Feb. 22, 2016). He has not stated a plausible claim against this defendant.

Caseworker W. Keller is not mentioned by name in the narrative section of the complaint, and there is insufficient factual content from which the court could plausibly infer that he or she was personally aware of a specific risk to Mr. Rutledge's safety and deliberately turned a blind eye to that risk. *Klebanowski*, 540 F.3d at 639-40. Liability

8

under 42 U.S.C. § 1983 is based on personal responsibility, and this defendant cannot be held liable for the "misdeeds" of other prison employees. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). This defendant will be dismissed.

Likewise, there is no indication from his allegations that Grievance Specialist Gapski was personally involved in these events other than to process his grievances. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011). Thus, "the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Id.; see also Daniel v. Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016). This defendant will be dismissed.

Finally, his complaint can be read to assert an excessive force claim against Sergeant McCray in connection with his second suicide attempt. Under the Eighth Amendment, inmates cannot be subjected to excessive force. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.*

Here, Mr. Rutledge alleges that he was not posing any threat, was emotionally distraught, and had just attempted suicide. He claims Sergeant McCray used more force

than was necessary to remove him from his cell, slamming his head on the bed and twisting his hands unnecessarily, causing him pain and injury. It can be plausibly inferred from his allegations that Sergeant McCray took these actions not in a good-faith effort to restore order, but because he was annoyed with Mr. Rutledge. He will be permitted to proceed on an excessive force claim against Sergeant McCray.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Warden Brian English, Deputy Warden Aaron Smith, Unit Team Manager Shaun Dwyer, Caseworker K. Murray, PREA Compliance Manager Lauren Harbaugh, Officer C. Nelson, Sergeant McCray (first name unknown), Sergeant Rodriguez (first name unknown), Sergeant Cervantes (first name unknown), Captain R. McCullum, Lieutenant B. Meyers, Internal Affairs Officer J. Snow, Case Manager T. Hamrick, and mental health provider B. Beck in their personal capacity for monetary damages for failing to protect him from harm posed by other inmates between June 2023 and January 2024 in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against Sergeant McCray in his personal capacity for monetary damages for using excessive force against him on or about July 28, 2023, in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Grievance Specialist Michael Gapski, Sergeant Everrate, and Caseworker W. Keller as defendants;

(5) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Brian English, Deputy Warden Aaron Smith, Unit Team Manager Shaun Dwyer, Caseworker K. Murray, PREA Compliance Manager Lauren Harbaugh, Officer C. Nelson, Sergeant McCray (first name unknown), Sergeant Rodriguez (first name unknown), Sergeant Cervantes (first name unknown), Lieutenant B. Meyers, Internal Affairs Officer J. Snow, Captain R. McCullum, and Case Manager T. Hamrick at the Indiana Department of Correction and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) B. Beck at Centurion Health and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(7) ORDERS the Indiana Department of Correction and Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available; and

(8) ORDERS Warden Brian English, Deputy Warden Aaron Smith, Unit Team Manager Shaun Dwyer, Caseworker K. Murray, PREA Compliance Manager Lauren Harbaugh, Officer C. Nelson, Sergeant McCray (first name unknown), Sergeant Rodriguez (first name unknown), Sergeant Cervantes (first name unknown), Lieutenant B. Meyers, Internal Affairs Officer J. Snow, Captain R. McCullum, Case Manager T.

Hamrick, and B. Beck to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on June 21, 2024

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT