UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TERRY DONALD RUTLEDGE, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:24-CV-155-JD-JEM |
| BRIAN ENGLISH, et al., | |
| Defendants. | |

OPINION AND ORDER

Terry Donald Rutledge, a prisoner without a lawyer, was previously granted leave to proceed against Warden Brian English, Deputy Warden Aaron Smith, Unit Team Manager Shaun Dwyer, Caseworker Katina Murray, PREA Compliance Manager Lorna Harbaugh, Officer Caleb Nelson, Sergeant Justin McCray, Sergeant Mario Rodriguez, Sergeant Armando Cervantes, Captain Ryan McCullum, Lieutenant Brandon Meyers, Internal Affairs Investigator Joshua Snow, Case Manager Timothy Hamrick, and mental health provider Baili Celeste Appleton for failing to protect him from harm posed by other inmates in violation of the Eighth Amendment. (ECF 9.) He was also granted leave to proceed against Sergeant McCray for using excessive force against him in violation of the Eighth Amendment. (*Id.*) Defendants answered the complaint and raised an exhaustion defense, and a deadline was set for them to file a motion for summary judgment based on this defense. (ECF 32.) However, in the interim, Rutledge filed an amended complaint. (ECF 36.)

As required by 28 U.S.C. § 1915A, the court must screen the amended complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Rutledge is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The court notes that the narrative section of Rutledge's amended complaint is highly detailed and consists of more than 20 single-spaced, handwritten pages. In the federal system, "[p]laintiffs need not lard their complaints with facts." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Instead, only a "short and plain statement" showing an entitlement to relief is required. Fed. R. Civ. P. 8(a). In deference to Rutledge's pro se status, the court will screen the amended complaint as drafted, but in the interest of judicial economy the court has attempted to paraphrase his allegations here.[1]

Rutledge is an inmate at Westville Correctional Facility who suffers from chronic depression. His amended complaint stems from events occurring at Miami Correctional

---

[1] The allegations in his amended complaint are substantially similar to those in the original complaint, although he has added some additional detail and dropped his claims against three defendants who were named in the original complaint. (*See* ECF 1, 36.)

2

Facility beginning in June 2023. (ECF 1.) Around that time he "came out" as a transgender woman and began receiving taunts and harassing comments from his cellmate and other inmates. He told a non-party mental health provider what was happening, and she in turn said she would notify the Prison Rape Elimination Act ("PREA") Compliance Manager, Lorna Harbaugh.[2] He claims she did in fact email PREA Manager Harbaugh on June 5, 2023, to tell her about the threats, but no action was taken to move him.

Around June 20, 2023, he met with Caseworker Murray and Deputy Warden Smith and told them he was afraid for his safety. He claims that by this point he had been sexually assaulted by his cellmate and another inmate, but he "withheld the details" of the assaults and instead said that these inmates were aggressively sexually harassing him and that he feared he would be assaulted. They promised to look into it. He later wrote Caseworker Murray a letter stating he had already been assaulted and told her the name of the inmate who committed the assault. He claims she became "hostile" toward him but said she would "deal with it."[3] He claims PREA Manager Harbaugh was notified again by email about his safety concerns. Days passed and nothing happened, during which time the assaults continued. He claims his cellmate also made comments to him suggesting he was aware that Rutledge was "telling on him."

---

[2] Rutledge mistakenly lists her first name as "Lauren," but the court uses the correct spelling as reflected in this defendant's answer to the original complaint. (ECF 31.)

[3] He suggests that she was romantically or otherwise personally involved with this other inmate.

On July 18, 2023, he and his cellmate were both moved to the P-cellhouse, the "most violent cellhouse in the facility." He believes this move was meant to punish him for speaking up about the assaults or to protect the other inmate involved. When he arrived at this cellhouse, inmates immediately began threatening him, stating they knew he "had been snitching." He notified Officer Caleb Nelson that he needed protective custody immediately and that he had been sexually assaulted a day earlier. Officer Nelson allegedly told him to "get some rest" and said he would bring him a rape kit. However, the officer never brought him the kit or moved him.[4] Investigator Snow came to speak with him a few days later and he told him everything that had happened, including his concerns that Caseworker Murray was trying to protect the inmate who assaulted him. The investigator said he would try to help him, but before any action was taken, Rutledge tried to commit suicide and was sent to an outside hospital for treatment.

On July 25, 2023, he returned from the hospital and was placed in the protective custody unit in the A-cellhouse. A few days later he attempted suicide again. He claims Sergeant McCray discovered him hanging in his cell and was unnecessarily rough when taking him to the medical unit, slamming his head against the bed and dropping him to the floor. He claims Sergeant McCray ridiculed him, accused him of "faking," and yelled to other guards, "I'm not carrying his fat ass down all those stairs."

---

[4] He claims that in response to a grievance he later filed, Officer Nelson falsely stated that he offered him a kit and he refused it.

4

Rutledge subsequently embarked on a "hunger strike" to protest what he viewed as a "widespread attempt to cover up my plight." On August 1, 2023, he was called to a meeting with the protective custody review committee, consisting of UTM Dwyer, Lieutenant Meyers, and Case Manager Hamrick. He claims that Captain McCullum, Investigator Snow, and his mental health provider, Ms. Appleton, were also present at this meeting. He claims he started to tell these employees everything that had happened but UTM Dwyer became "hostile" and called him a liar. He claims he was "soft spoken and respectful," but the meeting ended abruptly when UTM Dwyer told him to leave. The following day, Lieutenant Meyers told Rutledge that after he left the room, UTM Dwyer told everyone that Rutledge had made sexual advances toward Caseworker Murray, which he claims is false.

He further claims no one at this meeting did anything to protect him. Instead, a few weeks after the meeting, he was told he was being "kicked out" of protective custody. He was told he would be sent to general population in the N-cellhouse, where one of the inmates who had sexually assaulted him lived. He claims he contacted Warden English telling him the matter was one of "life and death" and that he could not be moved to that cellhouse. He also "begged" Ms. Appleton and UTM Dwyer for help, but he claims they did nothing to help him.

In early September 2023, he was taken to N-cellhouse by Sergeant McCray. He repeated his safety concerns to this officer, who allegedly responded that he "could care less" and threatened to "face plant" him if he did not cooperate with the move. When Rutledge arrived he could hear the two inmates who had previously assaulted him

5

yelling and calling him names. In the ensuing days he was subjected to "homophobic taunts" and threats from the other inmates. He claims Sergeant McCray and Sergeant Cervantes overheard the threats but did nothing to help him. At one point, Sergeant Cervantes came to his cell to collect some clothing and he told the officer he needed help. The officer allegedly said, "I don't care I just want the jumpsuit." The next day, he was "brutally raped" by his cellmate, after which he was taken to an outside hospital for treatment. Upon his return, he was placed back in protective custody in A-cellhouse.

In late October 2023, Sergeant Rodriguez was passing out food trays in his unit and allegedly called him a "faggot" and told other inmates he was a snitch. During this period Rutledge had been avoiding the shower so that he would not be assaulted there; Sergeant Rodriguez allegedly made fun of him, telling him he smelled bad and that he was going to make him take a shower "so they can get you." The officer then allegedly sprayed him with mace so that he had to go take a shower. A few days later Rutledge met with Investigator Snow and complained about Sergeant Rodriguez's behavior. It appears that Sergeant Rodriguez received some type of punishment, but a few days later he returned to the unit and continued to make harassing remarks toward Rutledge. He also told another inmate that Rutledge had made a complaint about him, which led to additional threats and inmates throwing urine and feces on him when he was in the shower. He claims he wrote multiple letters to the Warden and to PREA Manager Harbaugh expressing concerns about his safety during this period, but nothing was done for almost three months, at which point he was transferred to a different facility.

Based on these events, he claims to have suffered severe physical and emotional injury. He sues Warden English, Deputy Warden Smith, UTM Dwyer, Caseworker Murray, PREA Manager Harbaugh, Officer Nelson, Sergeant McCray, Sergeant Rodriguez, Sergeant Cervantes, Lieutenant Meyers, Captain McCullum, Investigator Snow, Caseworker Hamrick, and Ms. Appleton seeking monetary damages.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). To be held liable for an Eighth Amendment violation, a defendant must have had "actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). Phrased another way, a prison employee must have "acted with the equivalent of criminal recklessness, in this context meaning that they were actually aware of a substantial risk of harm to [the plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008).

Giving Rutledge the inferences to which he is entitled, he has alleged a plausible failure-to-protect claim against Warden English, Deputy Warden Smith, UTM Dwyer, Caseworker Murray, PREA Manager Harbaugh, Captain McCullum, Officer Nelson, Sergeant McCray, Sergeant Rodriguez, Sergeant Cervantes, Lieutenant Meyers, Investigator Snow, Case Manager Hamrick, and Ms. Appleton.[5] He claims that he made all of them personally aware he would be sexually assaulted if he did not receive protection from certain inmates. By his account, they did nothing to help him and, as to some of the defendants, further endangered him by transferring him to dangerous areas of the prison and labeling him a snitch in front of other inmates. *See Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008) (observing that "it's common knowledge that snitches face unique risks in prison"). He claims he was sexually assaulted multiple times in the manner he warned these prison employees about. He will be permitted to proceed further on a claim against these defendants under the Eighth Amendment.

His amended complaint can also be read to assert an excessive force claim against Sergeant McCray in connection with his second suicide attempt. Under the Eighth Amendment, inmates cannot be subjected to excessive force. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted).

---

[5] It is not entirely clear at this stage whether a mental health provider had the ability to move him to a different cell, but he claims Ms. Appleton participated in the protective custody meeting and turned a blind eye to his safety concerns. The court must afford him all favorable inferences arising from his allegations at this stage. *Twombly*, 550 U.S. at 570.

Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.*

Here, Rutledge alleges that he was emotionally distraught and had just attempted suicide. Sergeant McCray allegedly used more force than was necessary to remove him from his cell and take him to the medical unit, slamming his head on a bed and dropping him to the floor. It can be plausibly inferred that Sergeant McCray took these actions not in a good-faith effort to restore order, but because he was annoyed with Rutledge or found the situation comical. He will be permitted to proceed further on an excessive force claim against Sergeant McCray.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Warden Brian English, Deputy Warden Aaron Smith, Unit Team Manager Shaun Dwyer, Caseworker Katina Murray, PREA Compliance Manager Lorna Harbaugh, Officer Caleb Nelson, Sergeant Justin McCray, Sergeant Mario Rodriguez, Sergeant Armando Cervantes, Captain Ryan McCullum, Lieutenant Branden Meyers, Internal Affairs Investigator Joshua Snow, Case Manager Timothy Hamrick, and mental health provider Baili Celeste Appleton in their personal capacity for monetary damages for failing to protect him from being sexually assaulted by other inmates between June 2023 and January 2024 in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against Sergeant Justin McCray in his personal capacity for monetary damages for using excessive force against him after he attempted suicide on or about July 28, 2023, in violation of the Eighth Amendment;

(3) DISMISSES all other claims; and

(4) ORDERS Warden Brian English, Deputy Warden Aaron Smith, Unit Team Manager Shaun Dwyer, Caseworker Katina Murray, PREA Compliance Manager Lorna Harbaugh, Officer Caleb Nelson, Sergeant Justin McCray, Sergeant Mario Rodriguez, Sergeant Armando Cervantes, Captain Ryan McCullum, Lieutenant Branden Meyers, Internal Affairs Investigator Joshua Snow, Case Manager Timothy Hamrick, and mental health provider Baili Celeste Appleton to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 18, 2024

/s/JON E. DEGUILIO  
JUDGE  
UNITED STATES DISTRICT COURT